**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

_____
              :

EDWIN LOPEZ and MERCEDES LOPEZ,  :
              :
       Plaintiffs,    :
              :   Civ. Action No. 16-2939-BRM-LHG
     v.         :
              :
ROSE DIDONATO, PAUL DIDONATO,   :
VICTORIA DIDONATO, LARRY DONATO,  :
MONMOUTH COUNTY SOCIETY FOR THE  :
PREVENTION OF CRUELTY TO ANIMALS,  :
MATTHEW GIULIANO, VICTOR AMATO,  :
NEW JERSEY STATE SOCIETY FOR THE  :     **OPINION**
PREVENTION OF CRUELTY TO ANIMALS,  :
JOHN DOE 1-10, JANE DOE 1-10, XYZ   :
CORPORATIONS 1-10, ABC      :
PARTNERSHIPS 1-10, and XYZ LLC 1-10,  :
              :
       Defendants.   :
_____:

**MARTINOTTI, DISTRICT JUDGE**

  Before this Court are the following motions: (1) Defendants Monmouth County Society for the Prevention of Cruelty to Animals ("MCSPCA") and Matthew Giuliano's ("Giuliano") (collectively, "Monmouth Defendants") Motion to Dismiss (ECF No. 17), pursuant to Fed. R. Civ. P. 12(b)(6); and (2) Defendant Victor Amato's ("Amato") Motion to Dismiss (ECF No. 20), pursuant to Fed. R. Civ. P. 12(b)(6). Plaintiffs Edwin Lopez and Mercedes Lopez (collectively, "Plaintiffs") oppose both Motions. (ECF No. 22.) Pursuant to Fed. R. Civ. P. 78(b), no oral argument was held. For the reasons set forth herein, the Motions to Dismiss are **GRANTED**.

## I. BACKGROUND[1]

Mercedes Lopez is a volunteer at the animal rescue agency Perth Amboy Happy Homes Shelter ("Happy Homes"). (ECF No. 16 at ¶ 1.) As part of her volunteer work for Happy Homes, Mercedes Lopez temporarily houses and cares for abandoned animals in the home she shares with her husband, Edwin Lopez, in Howell, New Jersey. (*Id.* at ¶ 2.)

In late February of 2013, a dispute arose between Mercedes Lopez and Defendants Rose DiDonato, Victoria DiDonato, and Paul DiDonato (collectively, the "DiDonatos") regarding the adoption of two dogs, Chloe and Tyler. (*Id.* at ¶¶ 9-35.) Plaintiffs allege that in retaliation for this dispute, on March 8, 2013, Rose DiDonato and Victoria DiDonato knowingly made a false report to the MCSPCA, claiming they had witnessed Mercedes Lopez mistreating animals in her care. (*Id.* at ¶¶ 36, 43.)

Giuliano, an officer for the MCSPCA, was assigned to investigate Rose DiDonato and Victoria DiDonato's report. (*Id.* at ¶¶ 36-37.) Giuliano contacted Defendant Larry Donato ("Donato"), a detective for Defendant New Jersey State Society for the Prevention of Cruelty to Animals (the "NJSPCA"), and they investigated the matter together. (*Id.* at ¶ 38.) During the course of their investigation, Giuliano and Donato allegedly interviewed the DiDonatos, and took photos of the outside of Plaintiffs' home, but did not contact Plaintiffs for questioning. (*Id.* at ¶¶ 39-44.) According to the Amended Complaint, when Rose DiDonato and Victoria DiDonato were interviewed by Donato, they made knowingly false claims about Mercedes Lopez's treatment of animals. (*Id.* at ¶ 43.) Additionally, Plaintiffs plead when Donato and/or Giuliano interviewed Paul DiDonato, he purposefully lied, claiming the DiDonatos had already paid to Mercedes Lopez

---

[1] For the purposes of these Motions to Dismiss, the Court accepts the factual allegations in the Amended Complaint (ECF No. 16) as true and draws all inferences in the light most favorable to Plaintiff. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

2

the adoption fee for Chloe, even though they had not. (*Id.* at ¶ 44.) Plaintiffs allege "Giuliano is directly subordinate to and acts at the direction of Amato at the MSPCA." (*Id.* at ¶ 97.)

Plaintiffs assert Giuliano, Donato, Amato, the MCSPCA, and the NJSPCA (collectively, "SPCA Defendants") "were negligent in the conduct of their investigation of the facts alleged by the DiDonatos." (*Id.* at ¶ 46.) Plaintiffs further assert Donato, Giuliano, and Amato, were aware the DiDonatos' claims were false, but nonetheless conspired to attain a search warrant based on these false statements. (*Id.* at ¶¶ 47-49, 90-92.) According to the Amended Complaint, Donato made knowingly false statements to the Superior Court of New Jersey, which resulted in the Superior Court finding probable cause to issue a search warrant for Plaintiffs' home.[2] (*Id.* at ¶¶ 45, 47, 92.) Plaintiffs assert Giuliano, Amato, and Donato selectively targeted Mercedes Lopez for an unconstitutional search, because Giuliano "knew that his attempt to prosecute [Mercedes] Lopez [in an earlier unrelated case regarding a 2012 adoption event (the "Manalapan Case")] was failing." (*Id.* at ¶¶ 82-87.) Plaintiffs also claim Giuliano had a personal vendetta against Mercedes Lopez, because of their relationship as former co-workers and Giuliano's previous investigations of the activities of Happy Homes. (*Id.* at ¶¶ 113-20.)

---

[2] Attached as Exhibit 5 to their supporting brief is a document which Monmouth Defendants claim is the search warrant at issue. (ECF No. 17-1, Ex. 5.) Additionally, Monmouth Defendants purportedly attach (1) Giuliano's report of his investigation of the DiDonato's complaint, dated April 23, 2013 (*Id.*, Ex. 1), and (2) four summonses issued to Mercedes Lopez by Giuliano, dated April 23, 2013 (*Id.*, Ex. 2). However, the Court cannot consider these documents, because Monmouth Defendants have not provided a certification of the documents' authenticity. *See* Fed. R. Civ. P. 901(a). Indeed, it is unclear to the Court if the four summonses submitted by Monmouth Defendants correspond to the "52 summonses" alleged by Plaintiffs. (*See* ECF No. 16 at ¶ 71.) In any event, even if the Court could consider these documents, they are not dispositive to the Court's decision on these Motions to Dismiss because, as explained *infra*, it is plain on the face of the Amended Complaint that the bulk of Plaintiffs' claims against Monmouth Defendants and Amato are barred by the applicable statute of limitations, and Plaintiffs have failed to state a claim upon which relief can be granted with regard to the remainder of their claims against these Defendants.

Plaintiffs further contend that despite the fact Donato, Giuliano, and Amato allegedly lacked probable cause to justify the issuance of the search warrant, they nonetheless executed the search warrant on March 10, 2013. (*Id.* at ¶¶ 50-51.) When Donato, Giuliano, and Amato arrived at Plaintiffs' home, they allegedly demanded entry to the house, without identifying themselves as law enforcement personnel or presenting the search warrant. (*Id.* at ¶¶ 54-55.) Plaintiffs allege "[t]hat approach caused [Mercedes] Lopez great mental anguish and intentionally inflicted emotional distress on [Mercedes] Lopez." (*Id.* at ¶ 56.) Furthermore, after gaining entry to the house, Donato allegedly "forcefully seized" Mercedes Lopez's phone and also "used unnecessary force against [Mercedes] Lopez by physically grabbing her and throwing her against a wall," which physically injured her. (*Id.* at ¶¶ 59-62.) Plaintiffs allege "[d]uring the course of the execution of the search warrant, [Mercedes] Lopez became so distraught that she was transported to the hospital." (*Id.* at ¶ 63.)

Animals allegedly belonging to Mercedes Lopez were also seized during the search. (*Id.* ¶¶ 53, 64-70, 94.) Plaintiffs assert Donato and/or Giuliano and/or Amato coerced Edwin Lopez into consenting to the seizure of these animals by threatening to wrongfully seize Mercedes Lopez's personal pet dog, Pepe. (*Id.* at ¶¶ 64-68.) Plaintiffs further assert Edwin Lopez had no connection with Happy Homes, and therefore "had no authority to relinquish ownership or otherwise consent to the removal of the animals from the home." (*Id.* at ¶ 69.) Plaintiffs claim "Giuliano, Amato and Donato knew or should have known that [Edwin]. Lopez had no authority to sign anything on behalf of Happy Homes." (*Id.* at ¶ 70.)

Plaintiffs claim "[f]ollowing the execution of the search warrant, Plaintiffs were issued 52 summons [sic] related to the care and maintenance of the animals kept at Plaintiffs' home." (*Id.* at ¶ 71.) At trial for the 52 summonses (the "Howell Case"), Plaintiffs assert "Rose DiDonato

admitted under oath that she lied to Donato regarding to the conditions she observed at Plaintiffs' house and that her statements that led to the issuance of the search warrant were false." (*Id.* at ¶ 72.) Based on this testimony, the Municipal Court of Howell, New Jersey, allegedly dismissed all charges against Plaintiffs, except three charges for "keeping an unlicensed cat, keeping an unlicensed dog and maintaining an unlicensed kennel. (*Id.* at ¶¶ 73-74.) It is unclear from the pleadings if Plaintiffs were ultimately convicted of these charges.

Plaintiffs assert "Giuliano, Amato, Donato and the DiDonatos conspired to wrongfully prosecute [Mercedes] Lopez and to inflict upon her severe emotional and financial distress." (*Id.* at ¶ 96.) Plaintiffs further assert "Giuliano, Amato and Donato obtained the cooperation of the DiDonatos by offering them the permanent, uncontested possession of Chloe." (*Id.* at ¶ 95.) Plaintiffs also allege Donato, Giuliano, and Amato selectively enforced laws against Mercedes Lopez, because they were allegedly aware Rose DiDonato did not provide proper medical treatment to Tyler and gave Tyler to her neighbor for adoption without first obtaining proper medical clearance, but "she was not prosecuted as Mercedes Lopez was." (*Id.* at ¶¶ 75-76.)

Plaintiffs contend in March 2015, a newspaper article reported Amato had been "accused of publishing via Twitter and text message, various racist and sexist message to his employees." (*Id.* at ¶ 99.) Plaintiffs assert, prior to March 2015, they "had no reason to have knowledge of" Amato's allegedly racist and sexist biases. (*Id.* at ¶¶ 99-102.) Plaintiffs claim that in addition to Donato, Giuliano, and Amato's personal biases against Plaintiffs, they also "singled out [Mercedes Lopez] for prosecution because she is a Hispanic Female." (*Id.* at ¶ 104, Count Seven.)

Plaintiffs further claim that sometime between November 20, 2014 and November 20, 2015, "Amato and/or Giuliano personally made telephone calls to known associates of Plaintiffs telling those associates that Plaintiff was an animal abuser and that donations of food should be

withheld from Plaintiff." (*Id.* at ¶¶ 107-08.) Additionally, Amato and/or Giuliano allegedly "told veterinarians who treated Plaintiff's animals not to provide future treatment for Plaintiff's animals." (*Id.* at ¶ 110.) Plaintiffs assert Mercedes Lopez "suffered significant monetary harm as the result of those telephone calls" because she was subsequently deprived of animal food and veterinary treatment that had previously been provided to her. (*Id.* at ¶¶ 107, 111.)

Lastly, Plaintiffs allege Mercedes Lopez has "suffered damages, both monetary, physical, emotional and to her reputation as a result of Defendant's wrongful actions," (*id.* at ¶ 112), and Edwin Lopez has "suffered the loss of the comfort, companionship and services of [Mercedes] Lopez as the result of the actions of Defendants," (*id.* at ¶ 123).

Plaintiffs commenced this action on November 20, 2015 in the Superior Court of New Jersey, Law Division, Monmouth County. (ECF No. 1-1.) On May 24, 2016, the case was removed to this Court. (ECF No. 1.) On June 17, 2016, Monmouth Defendants moved to dismiss the claims against them, pursuant to Rule 12(b)(6) (ECF No. 10), and on June 25, 2016, Amato did the same. (ECF No. 13.)

Rather than oppose the pending Motions to Dismiss, on July 18, 2016, Plaintiffs filed an Amended Complaint asserting the following claims against Defendants: (1) claims by both Plaintiffs against the DiDonatos for making false statements about Plaintiffs to law enforcement officials with the intent of inducing law enforcement to take action against Plaintiffs (Count One); (2) claims by both Plaintiffs against the DiDonatos for slander and defamation (Count Two); (3) claims by both Plaintiffs against SPCA Defendants for selective enforcement of the law (Count Three); (4) claims by both Plaintiffs against SPCA Defendants for issuing summonses that were overreaching, abusive, and unsupported by evidence (Count Four); (5) claims by Mercedes Lopez against Monmouth Defendants and Donato for "falsely certifying to summonses" (Count Five);

6

(6) claims by both Plaintiffs against Monmouth Defendants and Amato for negligent failure to conduct a proper investigation of the claims against Plaintiff (Count Six); (7) claims by both Plaintiffs against Monmouth Defendants and Amato for "singling out [Mercedes Lopez] for prosecution because she is a Hispanic Female" (Count Seven); (8) claims by both Plaintiffs against Monmouth Defendants and Amato for wrongful seizure of Mercedes Lopez's animals, in violation of Plaintiffs' civil rights (Count Eight); (9) claims by Mercedes Lopez against Monmouth Defendants and Amato for wrongful seizure of her cell phone, in violation of her civil rights (Count Nine); (10) claims by Mercedes Lopez against Monmouth Defendants and Amato for preventing her from talking or speaking to anyone during the execution of the search warrant by seizing her cell phone, in violation of her civil rights (Count Ten); (11) claims by Mercedes Lopez against Monmouth Defendants and Amato for use of excessive force against her (Count Eleven); and (12) claims by both Plaintiffs against all Defendants for wrongful and negligent acts, resulting in Plaintiffs' loss of consortium, loss of society, affection, assistance, and conjugal fellowship, all to the detriment of their marital relationship (Count Twelve). These Motions followed.[3]

## II. LEGAL STANDARD

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips*, 515 F.3d at 228. "[A] complaint attacked by a . . . motion to dismiss does not need detailed factual allegations." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). However, the Plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of

---

[3] The DiDonatos, Donato, and the NJSPCA have also moved, pursuant to Rule 12(b)(6), to dismiss the claims against them. (ECF Nos. 34, 38.) However, as of the date of this Opinion, these Motions have not been fully briefed, and, therefore, the Court will not address them in this Opinion.

the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* (citing *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than 'an unadorned, the defendant-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

### III. DECISION

#### A. Statute of Limitations

Monmouth Defendants and Amato both assert the claims against them should be dismissed, because, among other reasons, they are barred by the relevant statutes of limitations. Typically, "the Federal Rules of Civil Procedure require a defendant to plead an affirmative defense, like a statute of limitations defense, in the answer, not in a motion to dismiss." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014). In the Third Circuit, however, a defendant may succeed on a motion to dismiss on the basis of statute of limitations, "if the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." *Id.* (quoting *Robinson v. Johnson*, 313 F.3d 128, 134-35 (3d Cir. 2002)) (quotations omitted).

Plaintiffs bring claims against Monmouth Defendants and Amato under 42 USC § 1983 for alleged violations of their rights under the United States Constitution (Counts Three to Eleven). Because there is no federal statute of limitations for § 1983, courts must apply the most appropriate or analogous state statute of limitations. *Dique v. N.J. State Police*, 603 F.3d 181, 185 (3d Cir. 2010). A § 1983 claim is governed by the applicable state's statute of limitations for personal injury claims. *Id.* In New Jersey, personal injury claims are subject to a two-year statute of limitations. *Id.*; N.J.S.A. 2A:14-2(a). Indeed, the parties agree the relevant statutes of limitations as to Plaintiffs' § 1983 claims is two years. Since Plaintiffs filed their Complaint on November 20, 2015, if any of their claims accrued prior to November 20, 2013, they will be barred by the two-year statute of limitations for personal injury claims.

##### i. Date of Accrual

Federal law governs a federal cause of action's accrual date. *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009). Under federal law, a claim accrues when the facts which support the claim

reasonably should have become known to the plaintiff. *Sameric Corp. v. City of Phila.*, 142 F.3d 582, 599 (3d Cir. 1998); *Cetel v. Kirwan Fin. Grp., Inc.*, 460 F.3d 494, 507 (3d Cir. 2006) (quoting *Mathews v. Kidder Peabody & Co.*, 260 F.3d 239, 252 (3d Cir. 2001)); *see also Large v. County of Montgomery*, 307 F. App'x 606, 606 (3d Cir. 2009). "The determination of the time at which a claim accrues is an objective inquiry; [courts] ask not what the plaintiff actually knew but what a reasonable person should have known." *Kach*, 589 F.3d at 634. Importantly, accrual is not tied to whether the potential claimant knew or should have known that the injury constitutes a legal wrong. *Giles v. City of Philadelphia*, 542 F. App'x 121, 123 (3d Cir. 2013) (citing *Sandutch v. Muroski*, 684 F.2d 252, 254 (3d Cir.1982)). Rather, "a cause of action accrues when the fact of injury and its connection to the defendant would be recognized by a reasonable person." *Kriss v. Fayette County*, 827 F. Supp. 2d 477, 484 (W.D. Pa. 2011) *aff'd*, 504 F. App'x 182 (3d Cir. 2012). Accordingly, "[a]s a general matter, a cause of action accrues at the time of the last event necessary to complete the tort, usually at the time the plaintiff suffers an injury." *Kach*, 589 F.3d at 634.

Here, under the facts alleged, the bulk of Plaintiffs' claims against Monmouth Defendants and Amato accrued more than two years before Plaintiffs filed the Complaint. The dispute between Plaintiffs and the DiDonatos allegedly began in late February, 2013. (ECF No. 16 at ¶¶ 9-35.) As a result of this dispute, on March 8, 2013, Rose DiDonato and Victoria DiDonato allegedly knowingly made a false report to the MCSPCA. (*Id.* at ¶¶ 36, 43.) Over the next two days, Giuliano, Donato, and Amato allegedly conducted their "negligent" investigation of the false report. (*Id.* at ¶¶ 38-46.) During that period, Giuliano, Donato, and Amato also allegedly conspired to make knowingly false statements to the Superior Court of New Jersey to improperly attain a search warrant without probable cause. (*Id.* at ¶¶ 45-49, 90-92.) On March 10, 2013, Giuliano, Donato, and Amato executed the search warrant at Plaintiffs' home and, in the process, allegedly

10

committed a host of constitutional violations, including unreasonably searching the home, unreasonably seizing Mercedes Lopez's cell phone and animals, and use of excessive force against Mercedes Lopez. (*Id.* at ¶¶ 50-70.)

Under the facts alleged, the injuries to Plaintiffs from SPCA Defendants' purported use of excessive force and unreasonable searches and seizures, were immediately apparent and obvious to Plaintiffs; specifically, because Plaintiffs suffered immediate physical and emotional injuries. Indeed, Plaintiffs contend Mercedes Lopez became so distraught that day, she had to be transported to the hospital. (*Id.* at ¶ 63.) Therefore, Plaintiffs should have reasonably recognized the fact of these injuries, as well as their connection to SPCA Defendants, when they occurred on March 10, 2013. Accordingly, Plaintiffs' claims against Monmouth Defendants and Amato regarding unreasonable search and seizure (Counts Eight to Ten) and Mercedes Lopez's claims against Monmouth Defendants and Amato regarding excessive use of force (Count Eleven) accrued outside the statute of limitations.

The Court finds Plaintiffs' selective enforcement claims also accrued on March 10, 2013. Typically, a "selective-enforcement claim will accrue at the time that the wrongful act resulting in damages occurs." *Dique*, 603 F.3d at 188. Under certain circumstances, however, a plaintiff may be reasonably unaware that he has been subject to selective enforcement, and therefore injured. *Id.* In such circumstances, the selective enforcement claim does not accrue until the plaintiff becomes aware that he has been the victim of selective enforcement. *Id.* Plaintiffs argue

> [Mercedes Lopez] was unaware that she was the subject to selective prosecution until approximately March 2015. On that date it was made public that Defendant Victor Amato was the subject of litigation which alleged that he had maintained a long-standing pattern of racist and sexist behavior. . . . Plaintiff Mercedes Lopez could not reasonably have known that Amato had acted in a racist and sexist manner until that fact was disclosed to the public in March 2015.

(ECF No. 22-1 at 13.)

In making this argument, Plaintiffs rely on the Third Circuit's ruling in *Dique v. New Jersey State Police*. (*Id.*) However, Plaintiffs' reliance on *Dique* is misplaced. In *Dique*, the Third Circuit found the plaintiff was "reasonably unaware of his injury because [the arresting officer] purported to stop his car for a speeding violation." *Dique*, 603 F.3d at 188. Accordingly, the *Dique* plaintiff's selective-enforcement claim did not accrue, under the discovery rule, until "his attorney became aware of the extensive documents describing the State's pervasive selective-enforcement practices," including performing traffic stops on the basis of racial profiling. *Id.* Conversely, here, under the facts alleged, Plaintiffs reasonably should have been aware of their injuries at the time they occurred, March 10, 2013.

Plaintiffs assert throughout the Amended Complaint that the DiDonatos' reports regarding the Plaintiffs' mistreatment of animals, as well as Donato's statements to the New Jersey Superior Court, were patently false. (ECF No. 16 at ¶¶ 43, 47.) Indeed, Plaintiffs affirmatively assert "Giuliano and Donato knew that the animals under the care of [Mercedes] Lopez were properly cared for." (*Id.* at Count Five.) Plaintiffs maintain their innocence was so apparent that, even if Giuliano, Donato, and Amato were unaware in good faith that the DiDonato's claims were false, they *should have known* their investigation was based on false information. (*Id.* at ¶ 92, Count Six.) Consequently, unlike the plaintiff in *Dique*, Plaintiffs in this case were never under the misapprehension that Giuliano, Amato, or Donato had probable cause to search their home or seize their property. Because Plaintiffs assert they were innocent of any abuse of animals, such that not even a reasonable suspicion of such abuse could be justified, they should have known by exercise of reasonable diligence and intelligence that they had been injured by Giuliano, Donato, and Amato's search of their home and seizure of their property. *See Love v. N.J. State Police*, Civ. No.

12

14-1313 (FLW)(TJB), 2016 U.S. Dist. LEXIS 69562, at *37 (D.N.J. May 26, 2016) (finding plaintiffs should reasonably have discovered their selective enforcement injuries at the time of arrest and search, because plaintiffs were allegedly arrested for "no apparent reason" and defendants purportedly falsely claimed to have discovered controlled substances in their search of plaintiffs' persons and car).

Moreover, under the facts alleged, as of March 10, 2013, Plaintiffs were already aware that Giuliano, Amato, and Donato harbored resentments against Mercedes Lopez, because of their "failing" prosecution of the Manalapan Case. (ECF No. 16 at ¶¶ 82-87.) And furthermore, before March 10, 2013, Mercedes Lopez had allegedly been embroiled in a long-standing personal dispute with Giuliano, arising from their relationship as former co-workers and Giuliano's previous investigations into the activities of Happy Homes. (*Id.* at ¶¶ 113-20.) Therefore, at the time of the allegedly unreasonable search and seizures, regardless of whether Plaintiffs were aware of Amato's purported biases against women and minorities, Plaintiffs should have reasonably known they were the victims of selective enforcement at the hands of Giuliano, Amato, and Donato, because they were aware of these officers' personal resentments and vendettas against them. For these reasons, Plaintiffs' selective enforcement claims against Monmouth Defendants and Amato (Counts Three, Six, and Seven) accrued on March 10, 2013 and are barred by statute of limitations.

Finally, regarding Plaintiffs' malicious prosecution claims against Monmouth Defendants and Amato (Counts Four and Five), the Court is unable to determine, based on the facts set forth in the pleadings, when these claims accrued. Malicious prosecution claims do not accrue "until the criminal proceedings have terminated in the plaintiff's favor."[4] *Heck v. Humphrey*, 512 U.S. 477,

---

[4] Plaintiffs argue their malicious prosecution claims should be equitably tolled, because "had [Mercedes Lopez] attempted to challenge her prosecution before the complete conclusion of her

489 (1994). Plaintiffs, however, do not allege the termination date of the Howell Case. Indeed, Plaintiffs do not even allege if they were ultimately convicted or acquitted of the charges brought against them in that case. Instead, Plaintiffs merely plead that all but three of the 52 summonses against them were dismissed by the Howell Municipal Court. (ECF No. 16 at ¶¶ 73-74.) Based on these facts, the Court is unable to determine if Plaintiffs' malicious prosecution claims accrued outside the statute of limitations. Therefore, the Court cannot rule on whether these claims are barred by statute of limitations at this stage in the proceedings. *See Schmidt*, 770 F.3d at 249 (claim may only be dismissed as barred by statute of limitations on motion to dismiss "if the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations") (quotations omitted).

In sum, the following claims against Monmouth Defendants and Amato accrued outside the applicable two-year statute of limitations: Plaintiffs' unreasonable search and seizure claims (Counts Eight to Ten); Mercedes Lopez's excessive force claims (Count Eleven); and Plaintiffs' selective enforcement claims (Counts Three, Six, and Seven).[5]

### ii.  Equitable Tolling

Once a defendant has successfully raised a statute of limitations defense to a claim, generally, it is the plaintiff's burden to show that the statute of limitations should be equitably

---

cases, certainly Defendants would have argued her case was not ripe and should be dismissed." (ECF No. 22-1 at 17.) However, such equitable tolling would be redundant, because a malicious prosecution claim does not accrue until the criminal proceedings have terminated in the plaintiff's favor.

[5] Although Plaintiffs also allege between November 20, 2014 and November 20, 2015, Amato and/or Giuliano made defamatory phone calls to associates of Plaintiffs, Plaintiffs do not bring claims based on these allegations. (*See* ECF No. 16 at ¶¶ 107-11.) Accordingly, the Court does not address in this Opinion whether any potential claims based on these alleged actions are barred by the applicable statute of limitations.

tolled. *Schmidt*, 770 F.3d at 251; s*ee also Credit Suisse Sec. (USA) LLC v. Simmonds*, 132 S. Ct. 1414, 1419 (2012). "At the motion to dismiss stage, a plaintiff who seeks to invoke equitable tolling need only 'plead the applicability of the doctrine.'"[6] *Perelman v. Perelman*, 545 F. App'x 142, 151 (3d Cir. 2013) (quoting *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1391 (3d Cir. 1994)). State tolling principals, unless inconsistent with federal law, apply to state statutes of limitation. *Dique*, 603 F.3d at 185.

Here, Plaintiffs argue their time-barred claims should be equitably tolled until March 9, 2015, the date the Manalapan Case concluded. (ECF No. 22-1 at 17-18); *see also State v. Lopez*, No. A-1142-13T1, 2015 N.J. Super. Unpub. LEXIS 481, at *2 (N.J. Super. Ct. App. Div. Mar. 9, 2015). They assert equitable tolling is proper, because SPCA Defendants "created an extraordinary interference with [Mercedes] Lopez's ability to bring a civil suit to seek redress for defendants' wrongdoings" by "subject[ing] [Mercedes] Lopez to groundless criminal prosecution in a total of 57 summonses in two towns for criminal animal neglect and abuse." (*Id.* at 17.)

Under New Jersey state law, a claim may be equitably tolled "where a plaintiff has 'in some extraordinary way' been prevented from asserting his rights." *Freeman v. State*, 347 N.J. Super. 11, 31 (N.J. Super. Ct. App. Div. 2002) (quoting *U.S. v. Midgley*, 142 F.3d 174, 179 (3d Cir. 1998)); *see also Gunset v. Marsh*, Civ. No. 12-4735 (DMC), 2013 U.S. Dist. LEXIS 25744,

---

[6] The Court notes "the discovery rule, which governs a claim's accrual date for statute of limitations purposes, is distinct from equitable tolling, which applies where circumstances unfairly prevent a plaintiff from asserting his claim. *Santos v. United States*, 559 F.3d 189, 199 (3d Cir. 2009). In that regard, on a motion to dismiss, unlike equitable tolling, a plaintiff does not have the burden of pleading facts indicating the applicability of the discovery rule. *Schmidt*, 770 F.3d at 251. According to the Third Circuit, a court "may not allocate the burden of invoking the discovery rule in a way that is inconsistent with the rule that a plaintiff is not required to plead, in a complaint, facts sufficient to overcome an affirmative defense." *Id.* (citations omitted). Thus, "in the context of the discovery rule[,] when the pleading does not reveal when the limitations period began to run[,] the statute of limitations cannot justify Rule 12 dismissal." *Id.* (marks omitted).

at *8 (D.N.J. Feb. 25, 2013). "However, absent a showing of intentional inducement or trickery by a defendant, the doctrine of equitable tolling should be applied sparingly and only in the rare situation where it is demanded by sound legal principles as well as the interests of justice." *Freeman*, 347 N.J. Super. at 31 (citing *Midgley*, 142 F.3d at 179). Plaintiffs have not alleged any facts showing inducement or trickery on the part of Monmouth Defendants or Amato, which could have prevented Plaintiffs from asserting their claims. Rather, Plaintiffs assert they were so emotionally and financially overwhelmed by the Manalapan Case and Howell Case, that they were prevented from timely asserting their rights in a civil action. However, ongoing criminal prosecutions do not constitute an "extraordinary" obstacle to bringing a civil action, and even incarcerated plaintiffs are expected to bring their civil claims in a timely manner. *See id.* at 32 (finding criminal prosecution and incarceration did not prevent plaintiff from exercising right to file suit); *Cooper v. Gloucester Cty. Corr. Officer*s, Civ. No. 08-103 (JBS), 2008 U.S. Dist. LEXIS 46816, at *10 (D.N.J. June 17, 2008) ("allegations of ignorance, illiteracy, lack of education, and general incarceration are not sufficient to relax the statute of limitations bar"); *Richards v. Cty. of Morris*, Civ. No. 07-1995 (WJM), 2007 U.S. Dist. LEXIS 49290, at *16 (D.N.J. July 5, 2007) ("plaintiff pleads only ignorance of the law and his incarceration, neither excuse being sufficient to relax the statute of limitations bar in this instance"). As such, Plaintiffs have failed to allege a sufficient basis to equitably toll the statute of limitations as to their time-barred claims.

Accordingly, the following claims against Monmouth Defendants and Amato are dismissed as barred by the statute of limitations: Plaintiffs' unreasonable seizure claims (Counts Eight to Ten); Mercedes Lopez's excessive force claims (Count Eleven); and Plaintiffs' selective enforcement claims (Counts Three, Six, and Seven).

**B.  Malicious Prosecution Claims (Counts Four and Five)**

A plaintiff asserting a § 1983 claim for malicious prosecution must allege the following

elements:

> (1) the defendants initiated a criminal proceeding; (2) the criminal
> proceeding ended in plaintiff's favor; (3) the proceeding was
> initiated without probable cause; (4) the defendants acted
> maliciously or for a purpose other than bringing the plaintiff to
> justice; and (5) the plaintiff suffered deprivation of liberty consistent
> with the concept of seizure as a consequence of a legal proceeding.

*Kossler v. Crisanti*, 564 F.3d 181, 186 (3d Cir. 2009). Here, however, Plaintiffs have failed to

plead two of these necessary elements: (1) that the Howell Case ended in Plaintiffs' favor and (2)

that Plaintiffs suffered a deprivation of liberty as a consequence of the Howell Case.

First, the Amended Complaint does not state the final disposition of the Howell Case.

According to the pleadings:

> 71. Following the execution of the search warrant, Plaintiffs were
> issued 52 summons [sic] related to the care and maintenance of the
> animals kept at Plaintiffs' home.
> 72. At trial for the summons [sic] in the Municipal Court of Howell,
> New Jersey, Defendant Rose DiDonato admitted under oath that she
> lied to Donato regarding to the conditions she observed at Plaintiffs'
> house and that her statements that led to the issuance of the search
> warrant were false.
> 73. The Howell Municipal Court subsequently dismissed all the
> summons [sic] against Plaintiffs except three that were unrelated to
> the care of the animals.
> 74. The remaining summons [sic] were for keeping an unlicensed
> cat, keeping an unlicensed dog and maintaining an unlicensed
> kennel.

(ECF No. 16 at ¶¶ 71-74.)

Importantly, Plaintiffs do not allege in the Amended Complaint whether they were

ultimately convicted or acquitted of these remaining three charges. Plaintiffs, subsequently assert

in their brief, "[a]t the case before the court in Howell Township, each and every one of the

summonses was dismissed against [Mercedes] Lopez. Instead, [Mercedes] Lopez voluntarily chose to plead guilty to three violations of municipal ordinances that were not originally contemplated by Defendants."[7] (ECF No. 22-1 at 22.) However, "it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Com. Of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988). Nonetheless, even accepting as true that Mercedes Lopez pled guilty to keeping an unlicensed cat, keeping an unlicensed dog, and maintaining an unlicensed kennel, and the remaining charges against her were dismissed, these facts would not constitute a favorable termination of the proceeding against her.

As the Third Circuit has explained:

> The favorable termination element is not categorically satisfied whenever the plaintiff is acquitted of just one of several charges in the same proceeding. When the circumstances -- both the offenses as stated in the statute and the underlying facts of the case -- indicate that the judgment as a whole does not reflect the plaintiff's innocence, then the plaintiff fails to establish the favorable termination element.

*Kossler*, 564 F.3d at 188. Here, Mercedes Lopez's charges for the unlicensed keeping of animals stemmed from the same incident as the dismissed charges for animal abuse and neglect. Accordingly, because Mercedes Lopez was convicted of those charges, the record as a whole does not reflect her innocence, and she cannot establish the favorable termination element. *See id.*; *Poku v. Himelman*, 448 F. App'x 217, 220 (3d Cir. 2011); *Kundratic v. Thomas*, 407 F. App'x 625, 629 (3d Cir. 2011).

Additionally, Plaintiffs have failed to allege that, as a result of SPCA Defendants' malicious prosecution of Plaintiffs in the Howell Case, Plaintiffs suffered a deprivation of liberty,

---

[7] The Court notes Plaintiffs allege in the Amended Complaint that both Plaintiffs were defendants in the Howell Case, but conflictingly, Plaintiffs take the posture in their opposition brief that Mercedes Lopez was the only defendant in the Howell Case.

consistent with the concept of seizure under the Fourth Amendment. "'[P]rosecution without probable cause is not, in and of itself, a constitutional tort.' The type of constitutional injury the Fourth Amendment is intended to redress is the deprivation of liberty accompanying prosecution, not prosecution itself." *DiBella v. Borough of Beachwood*, 407 F.3d 599, 602-03 (3d Cir. 2005) (quoting *Gallo v. City of Philadelphia*, 161 F.3d 217, 222 (3rd Cir. 1998)) (citations omitted). To determine whether there has been a deprivation of liberty in the context of a malicious prosecution claim, courts look to whether "the state [has] place[d] constitutionally significant restrictions on a person's freedom of movement for the purpose of obtaining his presence at a judicial proceeding." *Schneyder v. Smith*, 653 F.3d 313, 321-22 (3d Cir. 2011). Thus, in the context of a malicious prosecution claim, "[p]retrial custody and some onerous types of pretrial, non-custodial restrictions constitute a Fourth Amendment seizure," while "merely attending trial does not amount to a seizure for Fourth Amendment purposes." *Black v. Montgomery Cnty.*, 835 F.3d 358, 367 (3d Cir. 2016).

Here, Plaintiffs do not allege they were subject to any pretrial custody or non-custodial restrictions. Instead, Plaintiffs assert the seizure of Mercedes Lopez's animals prior to the issuance of the summonses constituted a deprivation of Plaintiffs' liberty, within the meaning of the Fourth Amendment. (ECF 22-1 at 21-22.) However, the seizure of Mercedes Lopez's animals did not in any way restrict Plaintiffs' freedom of movement. Accordingly, this seizure does not constitute a deprivation of Plaintiffs' liberty within the context of a malicious prosecution claim. Therefore, the malicious prosecution claims against Monmouth Defendants and Amato (Counts Four and Five) are dismissed.

19

### C.  Loss of Consortium Claims (Count Twelve)

Plaintiffs assert "as a result of the wrongful and negligent acts of the Defendants, Plaintiffs were caused to suffer, and will continue to suffer in the future, loss of consortium, loss of society, affection, assistance, and conjugal fellowship, all to the detriment of their marital relationship." (ECF No. 16 at Count Twelve.) However, a loss of consortium claim cannot be sustained in the absence of a defendant's liability to a plaintiff's spouse. *See Murray v. Commercial Union Ins. Co. (Commercial)*, 782 F.2d 432, 438 (3d Cir. 1986). Therefore, because Plaintiffs' underlying claims all fail as a matter of law, Plaintiffs' corresponding claims for loss of consortium likewise fail. Accordingly, Plaintiffs' claims for loss of consortium against Monmouth Defendants and Amato (Count Twelve) are dismissed.

### IV. CONCLUSION

For the reasons set forth above, Monmouth Defendants' Motion to Dismiss (ECF No. 17) and Amato's Motion to Dismiss (ECF No. 20) are **GRANTED**. Plaintiffs' claims against Monmouth Defendants and Amato are **DISMISSED**. An appropriate Order will follow.

**Date: March 16, 2017**                     */s/ Brian R. Martinotti*
                                             **HON. BRIAN R. MARTINOTTI**
                                             **UNITED STATES DISTRICT JUDGE**